UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Roderick Webber</u>

     v.                       Civil No. 18-cv-931-LM
                                  Opinion No. 2020 DNH 005

<u>Edward Deck, et al.</u>


# O R D E R

Roderick Webber, proceeding pro se, brings eighteen claims against a large group of defendants arising out of alleged assaults on him that occurred during a "No Labels Problem Solvers" political event held at the Radisson Hotel in Manchester, New Hampshire, in October 2015. Specifically, Webber alleges that he was assaulted at the event by defendants Edward Deck (an agent of Donald J. Trump for President, Inc.), Fred Doucette (a New Hampshire State Representative), and several officers of the Manchester Police Department. Defendants Donald J. Trump for President, Inc. ("Trump Campaign"), Deck, and Doucette, move to dismiss the claims against them. Webber objects.


## STANDARD OF REVIEW

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts the well-pleaded factual allegations in the complaint as true and construes

reasonable inferences in the plaintiff's favor. Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## BACKGROUND

The following background information is summarized from Webber's second amended complaint, document number 75. The complaint is forty-five pages long, single-spaced, followed by thirty-two pages of additional material that Webber labels as appendices.[1]

Webber describes himself as a "video and print journalist and a documentary filmmaker" and "a known internet and radio personality and peace activist." Doc. no. 75 at 1. He explains that during the 2016 presential campaign he became known as

---

[1] The appendices are comprised of information provided by Webber about some of the defendants and his communications with them. He includes links to various news media and "youtube" sites, and lists of things that Webber represents are videos, photos, financial records, and "Press." None of the actual evidence referred to in the appendices was filed as part of the record. For example, Webber did not provide copies of emails, videos, photos, articles, or documents. Therefore, the appendices do not provide evidence that can be considered by the court.

"Flower Man" because he would hand out flowers as symbols of peace to the major candidates. Webber attended a Trump Campaign event in September 2015, where his reading from the Bible, "First Timothy," caused him to be evicted from the event.[2] He also attempted to attend a Trump Campaign event on September 30 but was turned away "because he was wearing religious attire." Id. at 8.

Webber then planned to attend a "No Labels Problem Solvers" event on October 12, 2015, at the Radisson Hotel in Manchester, New Hampshire. He alleges that No Labels Problem Solvers ("No Labels") publicized the event as a public forum where citizens could challenge presidential candidates. He attempted to get press credentials for the event but was unsuccessful and, instead, attended as a member of the public.

A No Labels spokesperson began the event by eliciting responses from the audience, encouraging the audience to shout and scream, and generally inciting a rowdy atmosphere. Jon Huntsman, Joe Lieberman, and Donald Trump spoke at the event. Webber did some filming and then sat with the press next to the stage.

---

[2] Webber states that he was assaulted and threatened with violence and that he continued to receive threats after the event.

The sound system was not working properly during the event, which caused difficulty for speakers. The microphone for audience members to use was not working during Candidate Trump's turn at the podium. Some audience members attempted to shout questions, which resulted in shouting from other audience members. Staff members brought out megaphones.

After Candidate Trump concluded his speech, Webber asked him if he were aware that Webber had been assaulted at a prior Trump Campaign event. Trump responded that Webber looked healthy. Edward Deck, who was inside the roped off area for the stage, tapped Webber on the back and said that there was a microphone at the rear of the room and that questions were only being taken from the microphone. Webber alleges that Deck was a security employee hired by the Trump Campaign through his company, XMark.[3]

Webber got up from his seat and went to the back of the room to use the microphone. He then realized that Deck had deceived him and that there was no microphone in the back. Certain unidentified Trump Campaign staff members, along with Deck and Fred Doucette (a New Hampshire state representative and then-co-chair of the New Hampshire Donald J. Trump for President

---

[3] Webber names as defendants two separate XMark entities: XMark, LLC (North Carolina) and XMark, LLC (Arizona). For ease of reference the court refers to the company Deck owns as "XMark."

campaign), and others made a wall around Webber that blocked him from returning to his seat.

Doucette told Webber to keep moving and that he was not going to get to use the microphone.  Webber told Deck, who was holding Webber, to get his hands off of him and asked him his name.  Deck responded in a threatening manner.

Webber waved to Trump to signal for access to the microphone.  James Pittman, an officer with the Manchester Police Department, and Deck grabbed Webber's arms, moved him past the seating in the back of the room, and threw him into a table, which knocked the table over.

Another Manchester police officer, Brian Cosio, joined Deck and Pittman.  Their efforts to move Webber caused him to be thrown to the floor.

Officer Cosio and Officer Daniel Craig took Webber outside. When Webber asked, Cosio and Craig said that he was being detained.  Captain Allen Aldenberg, who was a sergeant at the time, arrived and told Webber that he was free to leave.  Craig agreed that Webber could leave.

Webber walked away from the hotel and stopped at a park bench with Aldenberg.  He asked Aldenberg to file a complaint against the people who Webber said had assaulted him.  Aldenberg took notes and then went back to the hotel to retrieve Webber's camera battery.  Webber saw that Aldenberg was talking with

Pittman, Cosio, and Craig. As Craig walked toward him, Webber shouted to Aldenberg to keep him away. Aldenberg, Pittman, and Craig then arrested Webber.

Webber attempted unsuccessfully to file a complaint with the Manchester Police Department about his treatment at the event. Several newspapers and other media published material about the event which Webber believes damaged his reputation. Webber contacted the Office of the New Hampshire Attorney General for assistance in pressing charges against those involved in removing him from the No Labels event and was told that the office would not open an investigation.

Webber then brought this action against President Donald J. Trump; Trump Campaign; The Trump Organization, Inc.; Trump Organization, LLC; Edward Deck; XMark; No Labels; the City of Manchester; James Pittman; Allen Aldenberg; Brian Cosio; Daniel Craig (together with Pittman, Aldenberg, and Cosio, the "Officer Defendants"); Fred Doucette; and JPA III Management Company, Inc. He alleged eighteen claims against the various defendants.

Defendants Trump Campaign, Deck, and Doucette are represented by the same counsel and refer to themselves jointly as the "Campaign Defendants." Webber brings eleven claims against all of the Campaign Defendants, including several state law claims, such as: Assault (Count I), Battery (Count II), Intentional Infliction of Emotional Distress (Count III),

Negligence (Count IV), Fraud (Count VI), and False Imprisonment (Count VII).  Webber also asserts numerous federal claims against all of the Campaign Defendants under 42 U.S.C. § 1983, including two counts of Violation of the First Amendment (Counts X and XI), Negligent Hiring and Retention (Count XII), False Imprisonment (Count XV), and False Arrest (Count XVI).

Webber also brings three additional claims against the Trump Campaign (but not Deck or Doucette): a state law claim for Negligent Hiring (Count V) and two federal claims under § 1983 for Negligent Supervision (Count XIII) and Retaliation (XVII). He brings one additional federal claim under § 1983 for Malicious Abuse of Process (Count XIV) against Deck (but not Doucette or the Trump Campaign).  Finally, he brings two federal claims under § 1983 against the Trump Campaign and Deck but not Doucette: Unreasonable Seizure (Count VIII) and Excessive Force (Count IX).

**DISCUSSION**

The Campaign Defendants move to dismiss all of the claims against them.  They contend that all federal claims against them must be dismissed because the complaint lacks factual allegations to show that they were state actors.  They also argue that all claims against the Trump Campaign are based on a theory of vicarious liability, but that there are no factual

7

allegations to support that theory.  Finally, they argue that
the state law claims asserted against Deck and Doucette fail on
the merits.  Webber objects to the motion, asserting that the
second amended complaint adequately alleges his claims against
each of the Campaign Defendants.

I.  Federal Claims

As discussed above, Webber brings several federal claims
against the Campaign Defendants under § 1983.  The Campaign
Defendants move to dismiss those claims on the ground that they
are not state actors, as is required for liability under § 1983.
Webber contends that the Campaign Defendants can be deemed to be
state actors because they conspired or participated in joint
action with the defendant police officers.

Section 1983 provides a remedy against persons who, while
acting under color of state law, deprive others of rights
secured by the federal constitution or federal law.  Klunder v.
Grown Univ., 778 F.3d 24, 30 (1st Cir. 2015).  Although a
private party does not ordinarily act under the color of state
law, a "plaintiff may demonstrate state action by showing that a
private party has conspired with state actors to deprive him of
a civil right."  Arias v. City of Everett, CV 19-10537-JGD, 2019
WL 6528894, at *9 (D. Mass. Dec. 4, 2019) (internal quotation
marks omitted).  A private entity also may be deemed a state

actor if the entity was "a willful participant in joint action with the State or its agents" and "jointly engaged with state officials in the challenged action." Dennis v. Sparks, 449 U.S. 24, 27-28 (1980).

A civil rights conspiracy requires an agreement between two or more persons to violate the plaintiff's federally protected rights. Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001). To show joint action or a conspiracy between the state and a private entity, "'the relationship or nature of cooperation between the state and a private individual must be pled in some detail.'" McGillicuddy v. Clements, 746 F.2d 76, 77 (1st Cir. 1984) (quoting Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980) (emphasis in original)). Conclusory allegations and speculation about what might have happened are insufficient to show joint action or a conspiracy. McGillicuddy, 746 F.2d at 78; see also Lucero v. Koncilja, 781 F. App'x 786, 788-89 (10th Cir. 2019); Liberty Sackets Harbor LLC v. Village of Sackets Harbor, 776 F. App'x 1, 3 (2d Cir. 2019); Little v. Hammond, 744 F. App'x 748, 751-52 (3d Cir. 2018).

In the second amended complaint, Webber alleges facts, which taken in the light most favorable to him, support his theory that certain unidentified Trump Campaign staff members, along with Doucette and Deck, worked jointly with the Manchester police to remove him from the No Labels event. Although

minimally sufficient, his allegations are enough to avoid dismissal of the § 1983 claims against the Campaign Defendants at this stage. The Campaign Defendants may challenge the sufficiency of the evidence of joint action through a properly supported motion for summary judgment.[4]

II. Vicarious Liability

The Campaign Defendants move to dismiss the state law claims against the Trump Campaign, all of which are based on the vicarious liability of the Trump Campaign for the actions of Deck, Doucette, certain unidentified campaign staff members, and the defendant police officers. The Campaign Defendants assert that there is no basis for the Trump Campaign's vicarious liability for those torts.

Under New Hampshire law, an employer may be vicariously liable for the torts committed by an employee who was acting within the scope of his employment. Tessier v. Rockefeller, 162 N.H. 324, 342 (2011). On the other hand, "[r]espondeat

---

[4] As discussed infra, the Campaign Defendants move to dismiss the state law claims against the Trump Campaign, arguing that it is not vicariously liable for its agents' actions under New Hampshire law. The Campaign Defendants do not, however, move to dismiss any of the § 1983 claims to the extent they are also based on vicarious liability. See, e.g., King v. Friends of Kelly Ayotte, 860 F. Supp. 2d 118, 126 (D.N.H. 2012) (holding that an entity cannot be sued pursuant to § 1983 under a theory of vicarious liability for its agents' actions). Therefore, the court does not address that argument.

superior, or vicarious liability, ordinarily does not extend to torts by independent contractors because the employer reserves no control or power of discretion over the execution of the work."[5] Arthur v. Holy Rosary Credit Union, 139 N.H. 463, 465 (1995). Whether an agency relationship has been created that is sufficient to support vicarious liability depends on establishing the following factual elements: "(1) authorization from the principal that the agent shall act for him or her; (2) the agent's consent to so act: and (3) the understanding that the principal is to exert some control over the agent's actions." Dent v. Exeter Hosp., Inc., 155 N.H. 787, 792 (2007). "Control by the principal does not mean actual or physical control at every moment; rather, it turns upon the principal manifesting some continuous prescription of what the agent shall or shall not do." Id. (internal quotation marks omitted).

A. Deck

Webber alleges that the Trump Campaign hired Deck and his company, XMark, to provide security services at the No Labels

---

[5] An exception to the independent contractor rule exists when an injury occurred while the independent contractor was engaged in an inherently dangerous activity. Arthur, 139 N.H. at 465. That exception does not apply here, as work as a security guard is not an inherently dangerous activity. See Abbott v. Town of Salem, 05-cv-127-SM, 2007 WL 764483, at *3-4 (D.N.H. Mar. 12, 2007).

event and that Deck interacted with Webber in that capacity. Thus, Webber does not allege that Deck was a Trump Campaign employee, but rather that he was an employee of XMark, which the Trump Campaign hired to perform security services. Therefore, Webber alleges that Deck was an independent contractor.

In his objection, Webber states in conclusory fashion that he has alleged facts to show that the Trump Campaign had control over Deck during the No Labels event. He cites no factual allegations, however, to show that the Trump Campaign provided a "continuous prescription" of what Deck should or should not do while acting as security for the event. Although Webber cites his allegation that "Defendants were often communicating through radios and headset apparatus," doc. no. 75 at ¶ 168, to show evidence that all defendants were working together against him, mere communications among unnamed defendants is insufficient to make out a claim that the Trump Campaign was providing "continuous prescription" to Deck of what he should or should not do. As such, Webber's allegations are insufficient to show that the Trump Campaign exercised control over the manner in which Deck conducted his security work and that would support an agency relationship for purposes of vicarious liability. Therefore, the Trump Campaign is not vicariously liable for Deck's actions.

B.  Manchester Police Officers

Based on the allegations in the second amended complaint,
No Labels hired off-duty Manchester police officers to provide
security services at the event.  Thus, there is no basis to hold
the Trump Campaign vicariously liable for the officers' actions.

To the extent Webber also intended to allege that the Trump
Campaign paid the City of Manchester to have the officers act as
security for the No Labels event, that allegation is
insufficient to support a theory of vicarious liability.  Webber
provides no facts to show that the Trump Campaign controlled the
police officers who were providing security.  Therefore, Webber
has not alleged sufficient factual information to support the
vicarious liability of the Trump Campaign for any torts
committed by the Manchester police officers.


C. Doucette and Unidentified Trump Campaign Staff Members

Webber alleges that Doucette was a co-chair of the New
Hampshire Trump Campaign, was an official with the Trump
Campaign, and was wearing a Trump Campaign staff pin at the No
Labels event.  He also alleges that certain unidentified Trump
Campaign staff members participated in blocking him from
returning to his seat.  The court finds Webber's complaint,
viewed favorably to him, plausibly alleges that Doucette was

part of the Trump Campaign either as an official or as a staff member.  As such, the Campaign would be vicariously liable for his actions along with the actions of other, as yet unidentified, staff members.

For these reasons, the Campaign Defendants' motion to dismiss the state law claims against the Trump Campaign is granted to the extent those claims are based on the Campaign's vicarious liability for the actions of Deck or the police officer defendants.  It is denied as to the state law claims based on the vicarious liability of Doucette and other—as yet—unidentified Trump Campaign staff members.

III.  <u>Merits of the State Law Claims</u>

Webber brings state law claims for assault, battery, intentional infliction of emotional distress, negligence, negligent hiring, training, supervision, and retention, fraud, and false imprisonment.  The Campaign Defendants move to dismiss all of the claims as insufficiently pleaded.

A.  <u>Assault and Battery (Counts I and II)</u>

To state a claim for assault under New Hampshire law, a plaintiff must allege facts that show "(1) the defendant intended to cause harmful or offensive contact to the plaintiff, and (2) the plaintiff must have been put in imminent

apprehension of such contact." Rand v. Town of Exeter, 976 F. Supp. 2d 65, 75 (D.N.H. 2013) (internal quotation marks omitted). "A defendant may be held liable for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." Id. at 75-76 (internal quotation marks omitted).

### 1. Deck

Webber alleges that Deck shouted and swore at him, "got in his face," and threatened him with harm.  Those actions, if true, support a claim for assault.[6]  Webber alleges that Deck tapped him on the shoulder and put his hands on him so that Webber told him to take his hands off.  Then, along with Manchester police, Deck tossed Webber into a table.  While Webber was trying to stand up, Deck grabbed him again and pushed him to the floor.  Those allegations support a claim of battery.

---

[6] The Campaign Defendants represent that the plaintiff made "nearly identical allegations" of assault in King, and that the allegations were insufficient to support the claim.  In King, however, the court dismissed the assault claim because the plaintiff did not allege "who did what when, and what their intent was." 860 F. Supp. 2d at 130.  In this case, Webber's allegations are sufficiently specific to support the claim.

Deck argues that even if Webber's allegations could otherwise support a claim for battery, the claim must still be dismissed. He contends that because he was acting as a security guard under RSA 106-F:4, XIII, he was authorized to toss Webber into a table and to push him to the ground in order to maintain decorum at the event, pursuant to RSA 627:6, V.

Under RSA 627:6, V, however, a "person authorized by law to maintain decorum or safety" at an event "may use non-deadly force when and to the extent that he reasonably believes it necessary for such purposes." Id. (emphasis added). Whether Deck reasonably believed the force he used was necessary to maintain decorum cannot be determined in the context of a motion to dismiss.

### 2. Doucette

Webber alleges that Doucette assaulted him by participating in the group, which included other Trump Campaign staff, that surrounded him to keep him from returning to his seat. He also alleges that Doucette told him in a loud and angry voice to keep moving. He further alleges that Doucette asked Webber if he would have to get "a badge" to remove him from the event. Those allegations, viewed in the light most favorable to Webber, are sufficient to state a claim for assault.

The second amended complaint, however, alleges no actions by Doucette (or other Trump Campaign staff) members that amount to battery.  Therefore, Count II is dismissed as to Doucette.

    3.  <u>Trump Campaign</u>

Webber alleges that the Trump Campaign is vicariously liable for the actions of Doucette and its staff.  For the reasons discussed above, that theory remains viable at this stage of the litigation.  Therefore, the assault claim survives against the Trump Campaign.  Because the second amended complaint does not allege any actions by Trump Campaign staff members that amount to a battery, that claim against the Trump Campaign is dismissed.


B.  <u>Intentional Infliction of Emotional Distress (Count III)</u>

 "In order to make out a claim for intentional infliction of emotional distress, a plaintiff must allege that a defendant 'by extreme and outrageous conduct, intentionally or recklessly cause[d] severe emotional distress to another.'"  Tessier, 162 N.H. at 341 (quoting Morancy v. Morancy, 134 N.H. 493, 496 (1991)).  Extreme or outrageous conduct is a high standard, and "it is not enough that a person has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been

characterized by malice." Mikell v. Sch. Admin. Unit No. 33, 158 N.H. 723, 729 (2009). Instead, the defendant's conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id.

The Campaign Defendants' actions at the No Labels event, as alleged by Webber, do not rise to the level of extreme or outrageous conduct that is actionable as intentional infliction of emotional distress. See King, 860 F. Supp. 2d at 129-30 (dismissing claim for intentional infliction of emotional distress based on allegations that defendants threatened and put their hands on plaintiff); see also Katz v. McVeigh, 931 F. Supp. 2d 311, 357 (D.N.H. 2013) (dismissing claim for intentional infliction of emotional distress based on defendants' alleged actions intentionally and unlawfully depriving plaintiffs of legal custody of their daughter because plaintiffs alleged only "instances of conduct that were arguably unconstitutional").

Therefore, Count III is dismissed as to the Campaign Defendants.

C.  Negligence (Count IV)

Webber alleges that the Campaign Defendants, along with other defendants, owed him a duty to use ordinary care to keep him safe from assault and battery while he was attending the No Labels event.

To state a claim for negligence, a plaintiff must allege facts that show the defendant owed him a duty, breached that duty, and that the breach caused the plaintiff harm. Yager v. Clauson, 169 N.H. 1, 5 (2016). "Whether a duty exists in a particular case is a question of law." Riso v. Swyer, 168 N.H. 652, 654 (2016). A plaintiff must allege facts that show a reasonable probability that he would not have been injured but for the defendant's negligence. Beckles v. Madden, 160 N.H. 118, 124 (2010). When a plaintiff contends that a defendant failed to provide a safe environment, he must allege facts to show that "it was reasonably foreseeable that an injury might occur because of the defendant's actions or inactions." Rallis v. Demoulas Super Markets, Inc., 159 N.H. 95, 101 (2009).

1.  Deck and Doucette

Webber's negligence claim against Deck and Doucette makes little sense. In essence, Webber contends that Deck and Doucette each owed Webber a duty to protect him from themselves. He provides no support for his contention that such a theory

represents a viable claim for relief.  Therefore, Webber's negligence claim in Count IV is dismissed as to Deck and Doucette.

### 2. Trump Campaign

The negligence claim as to the Trump Campaign is based largely on a theory of vicarious liability for Deck's and Doucette's actions.  See doc. no. 75 at ¶¶ 142-43 (alleging that the Trump Campaign is vicariously liable for the negligence of its employees).  Because the negligence claims against Deck and Doucette fail, so, too, does a claim for negligence against the Trump Campaign based on vicarious liability.

Viewed generously, the second amended complaint also alleges a negligence claim against the Trump Campaign based on an alleged duty to protect Webber from harm caused by Deck and Doucette.  Webber alleges, based on information and belief, that Deck has a history of assaults and batteries and that the Trump Campaign was aware of that history.  He further alleges that Deck and Trump Campaign security staff "were prone to commit assault and battery on any person they perceived to be opposed to Defendant Trump."  Doc. no. 75 at ¶ 135.

To the extent the complaint alleges that the Trump Campaign could have reasonably foreseen the harm Webber alleges that Deck caused because it should have been aware of his proclivity

toward violence, such a claim is captured by his negligent hiring and supervision claim.  For the reasons discussed _infra_, that claim remains in the case.  Webber offers no theory of negligence against the Trump Campaign other than one redundant of his negligent hiring and supervision claim.  Therefore, the negligence claim is dismissed as to the Campaign Defendants.

      D.   Negligent Hiring and Supervision (Count V)

The negligent hiring and supervision claim is brought against the Trump Campaign, not Deck and Doucette.  Webber alleges that the Campaign and others knew or should have known that Deck and police officer Pittman were unfit for their jobs as security guards because of their past conduct and that they were "peculiarly likely to commit intentional misconduct and created a danger of harm" to him.  Doc. no. 75 at ¶ 145.

An employer has a duty to use reasonable care in hiring, training, and supervising its employees.  Trahan-Laroche v. Lockheed Sanders, Inc., 139 N.H. 483, 485-86 (1995); Cutter v. Town of Farmington, 126 N.H. 836, 840-41 (1985).  "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor to do work which will involve a risk of physical harm unless it is skillfully and carefully

done."  Richmond v. White Mountain Rec. Ass'n, 140 N.H. 755, 758 (1996) (citations and internal punctuation omitted).

Because the Campaign Defendants do not address the issue, the court assumes without deciding that providing security services could be the kind of work that involves "a risk of physical harm" that would invoke an employer's duty to use reasonable care in employing a security contractor.  Giving Webber all reasonable inferences, the second amended complaint makes out a claim for negligent hiring and supervision against the Trump Campaign.  Webber alleges that Deck's past conduct involved violence and that the Trump Campaign knew or should have known about it.  Whether Webber has any factual support for his allegations is a question best left for summary judgment.[7] Therefore, the Campaign Defendants' motion to dismiss is denied as to Count V to the extent it is asserted against the Trump Campaign.

E.  Fraud (Count VI)

Under New Hampshire law, to state a claim for fraud a plaintiff must allege facts that show (1) the defendant

---

[7] At the summary judgment stage, the Trump Campaign may also address if there is any factual basis for Count V to the extent it alleges that the Trump Campaign knew or should have known of Pittman's alleged violent conduct.

intentionally made a misrepresentation to him, (2) for the purpose of inducing him to act, (3) he justifiably relied on the misrepresentation, and (4) as a result he suffered harm. Tessier, 162 N.H. at 332. "In order to withstand a motion to dismiss, the plaintiff must specify the essential details of the fraud, and specifically allege the facts of the defendant's fraudulent actions." Id. (brackets and quotation omitted) (quoting Jay Edwards, Inc. v. Baker, 130 N.H. 41, 46-47 (1987)).

Viewed generously, Webber's claim for fraud is based on the following allegations: (1) Deck fraudulently misrepresented to Webber that the microphone was in the back of the room for the purpose of having him leave his seat and to prevent him from questioning Candidate Trump, which caused him pecuniary losses;[8] (2) the Campaign Defendants misrepresented to the Manchester police that they were active duty secret service agents and under that assumed authority instructed the police to remove Webber from the No Labels event, which deprived him of his First Amendment rights; and (3) Deck made gross misrepresentations and

_____

[8] In the section of Webber's second amended complaint devoted to his claim for fraud, Webber states that "defendants" made a misrepresentation about the microphone. Elsewhere in his second amended complaint, however, Webber makes clear that only Deck made a representation about the microphone. See doc. no. 75 at ¶ 41 (stating that Deck informed Webber that he needed to go to the back of the room to speak into the microphone); id. at ¶ 42 (alleging that Webber "realizes that Defendant Deck has deceived him into believing that there is a microphone").

fraudulent claims in an affidavit written by Officer Pittman that portrayed Webber in a bad light.

The Campaign Defendants argue that Webber has not alleged facts to show detrimental reliance on any of the alleged misrepresentations. With regard to the second and third categories of misrepresentations, that argument is correct. None of the alleged misrepresentations was made to Webber and he does not allege that he relied on any of the statements.

With regard to Deck's misrepresentation about the microphone, at this stage of the litigation and viewing the facts alleged in the light most favorable to Webber, the second amended complaint includes allegations of a misrepresentation made to Webber with the alleged intent to have him rely on it and his justifiable reliance. Therefore, the claim survives as against Deck.

Because Webber does not allege that Doucette made the misrepresentation about the microphone, Count VI is dismissed to the extent it is alleged against him. And, for the reasons stated above, the Trump Campaign is not vicariously liable for Deck's actions, and so Count VI is dismissed as to the Trump Campaign.

F.  <u>False Imprisonment (Count VII)</u>

Webber alleges that the Campaign Defendants, along with other defendants, falsely imprisoned him by surrounding him with a "human wall" to prevent him from returning to his seat.[9]

> To prevail on a claim for false imprisonment, a plaintiff must show four elements: (1) the defendant acted with the intent of confining him within boundaries fixed by the defendant; (2) the defendant's act directly or indirectly resulted in the plaintiff's confinement; (3) the plaintiff was conscious of or harmed by the confinement; and (4) the defendant acted without legal authority.

[Farrelly v. City of Concord](), 168 N.H. 430, 445 (2015).

The Campaign Defendants argue that the false imprisonment claim fails because Webber has not alleged that he was confined within fixed boundaries. Their argument on this point, however, is unclear. To the extent the Campaign Defendants believe that false imprisonment occurs only when a plaintiff is confined in a specific structure or something more "fixed" than a human wall, they have not cited any cases to support that legal principle. Therefore, the Campaign Defendants have not shown grounds to dismiss the false imprisonment claim.

---

[9] Webber also alleges that the defendant police officers falsely imprisoned him by arresting him without cause and that the Trump Campaign is vicariously liable for the officers' conduct. For the reasons discussed <u>supra</u>, the Trump Campaign is not vicariously liable for the officers' conduct.

IV.  <u>Remaining Claims</u>

The court has adjudicated several defendants' motions to dismiss.  The remaining claims in this case are as follows:

- As against XMark: Counts I–XIII, XV, and XVI;

- As against the Trump Campaign: Counts V, X–XIII, and XV-XVII.  In addition, Counts I and VII against the Trump Campaign remain in the case to the extent they are based on vicarious liability for Doucette's or Trump Campaign staff's actions;

- As against Deck: Counts I, II, VI-XII, and XIV-XVI;

- As against Doucette: Counts I, VII, X, XI, XII, XV, and XVI;

- As against the City of Manchester: Counts I-V, VII-XVIII;

- As against each of the Officer Defendants: Counts I-IV, VII-XII, XIV-XVII;

- As against Aldenberg but not the other Officer Defendants: Count XIII; and

- As against Craig, Cosio, and Aldenberg but not Pittman: Count XVIII.

**CONCLUSION**

For the foregoing reasons, the Campaign Defendants' motion to dismiss (document no. 97) is granted in part and denied in part as follows:

Counts II and VI are dismissed as against Doucette and the Trump Campaign.

Counts III and IV are dismissed as against Deck, Doucette, and the Trump Campaign.

Counts I and VII are dismissed as against the Trump Campaign to the extent they are based on vicarious liability for Deck's actions.

The motion is otherwise denied.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

January 13, 2020

cc:  Peter S. Cowan, Esq.
     Samantha Dowd Elliott, Esq.
     Chloe F. Golden, Esq.
     Bryan K. Gould, Esq.
     Christian Hinrichsen, Esq.
     Matthew David Mortensen, Esq.
     Adam B. Pignatelli, Esq.
     Jonathan S. Spaeth, Esq.
     Roderick Webber, pro se